# BERWIND WHITE COAL MINING COMPANY, Complainant,

*v.*

# BORINQUEN SUGAR COMPANY, Dft.

# CLAIM OF ORENSTEIN-ARTHUR-KOPPEL COMPANY.

San Juan, Equity, No. 897.

EQUITABLE PREFERENCE.

Reconsideration of Master's Report.

1. A master's report as to certain preferences, including claim of petitioner, which was denied preference therein, not having been excepted to by petitioner and having "stood confirmed" within equity rule 66, although not formally confirmed by court order, will not be reopened or reconsidered after several terms have elapsed since said confirmation.

Necessity of Exception as to Question of Law.

2. Exceptions to a master's report within the twenty-day period provided by the equity rules are not necessary to raise questions as to pure errors of law, but even such errors will not be considered by the court beyond the term during which the report was filed.

Equitable Lien.

3. The purchaser, upon the reorganization sale of defendant's properties, took over the cane cars which had been sold defendant by petitioner and not paid for; these facts were known to purchaser. *Held,* that if purchaser wished to retain the cane cars it should pay the reasonable market value thereof on the day of said sale.

Opinion filed June 17, 1915.

NOTE.—As to effect of consolidation, merger, or absorption of corporation on its unsecured liabilities, in absence of statutory or contract provision relative thereto, see notes in 11 L.R.A.(N.S.) 1119; 32 L.R.A. (N.S.) 616; 47 L.R.A.(N.S.) 1058.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

## Statement of Facts.

In this case the court on June 17, 1913, ordered the claims to be filed with the clerk within sixty days, and that, after thirty days more for objections, the claims should stand referred to John M. Dabney, standing master in chancery, to report their validity and priority. On September 25, 1913, a further order was made that claims already filed with the receiver would be considered as filed with the clerk as above. In October claims were heard before the master, including that of Orenstein-Arthur-Koppel Company for one hundred cane cars sold and delivered to the Borinquen Sugar Company during March and April, 1912, at the price of $7,994.61. At the same time there was proved among other claims that of the New Orleans Acid & Fertilizer Company for fertilizer sold in May, 1911, at a price of $4,956.88. On the 14th of October, 1913, there was filed the report of the standing master on these claims, under which the two above mentioned were declared general credits. During October and November certain exceptions were filed. On February 9, 1914, the claim of José Maria Ortiz, as reported by the master, was confirmed, there being no exceptions. On March 6, 1914, the exception previously filed by the West India Oil Company was sustained, and the "claim declared a preferred one, to rank with other similar claims up to, and not exceeding the amount of, $57,492.20," which had been paid by the receiver to the bondholders for interest. A similar order was made as to the claim of the Berwind White Coal Mining Company. On the 17th of March, 1914, T. D. Mott was appointed special master to "hear and determine all preferred claims against the estate herein and

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

to determine the order of priority of such preferred claims as to each other, and report to the court. All petitions pending herein are also referred to said special master." On May 18, 1914, certain claims were referred back to the standing master in chancery for "reconsideration and report in conformity with the opinion of the court on exceptions of the West India Oil Company in this case," and thereafter the standing master reported these claims as preferred. On July 2, 1914, the report of special master Mott as to classification and priority was filed and subsequently confirmed.

Nothing was done with the claim of Orenstein-Arthur-Koppel Company until, on February 5, 1915, a petition was filed on their behalf setting up that the cane cars which they sold were furnished and necessary for the conduct of the business of the defendant corporation, and were delivered to it within six months of the appointment of the receiver, and it claimed lack of notice of the filing of the master's report of October 14, 1913, as a reason for not filing exceptions. The petition prayed that the claim be declared preferred, in accordance with the order of March 6, 1914. This was duly referred to Standing Master Dabney, and on May 10, 1915, he filed an adverse report. This was duly excepted to on the ground that the master erroneously denied the preference granted to other claimants, and on the further ground that the master found the claim not entitled to a rehearing on its merits. The exception was duly heard and the matter submitted.

*Mr. H. G. Molina* for claimants.

*Mr. Jorge Dominguez* for Reorganization Committee.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

*Mr. Chas. Hartzell* for receiver.

*Mr. H. H. Scoville* for New Orleans Acid & Fertilizer Co.

HAMILTON, Judge, delivered the following opinion:

1. This is an application by the petitioners seeking to bring themselves within the principle of the West India Oil Company, reported in 6 Porto Rico Fed. Rep. 567. It is based upon the case of Fosdick v. Schall, 99 U. S. 235, 25 L. ed. 339. Preliminary to any question of the measure of relief is that of the standing of the applicant in court. They regularly filed their claim in this receivership under an order of court calling for claims, and it was allowed as an unsecured claim by master's report of October 14, 1913. No exception was filed to this report, and it seems that there was no formal confirmation of the report. But under equity rule 66, prescribed by the Supreme Court, it "stands confirmed" after twenty days. It may well be that the confirmation of a report, whether automatic as here, or by a formal decree as has usually been done, stands on no higher plane than any other decree of the court, and it might be subject to revision on proper showing during the same term. In the case at bar, however, several terms have elapsed, and the court feels that it not only has no right to reopen the matter, but it would destroy all sense of reliance upon the proceedings of this court if, after several terms, it should undertake to reconsider a decree of any kind. The whole matter of classifying the priorities in this case was referred to Special Master Mott on July 2, 1914. It is true that the applicants were not strictly within the terms of this refer-

ence, as their claims had not been given priority; but, never-
theless, in the meantime had come the decree in the West India
Oil Co. Case, giving priority to that claim on the principle of
Fosdick v. Schall, and if there is any merit in the present ap-
plication, it should have been made within a reasonable time
after that decree of March 6, that is to say, before the court
adjourned for the summer, in 1914. The fact seems to be
that the applicant undertook to manage his own case, possibly
in the absence of his regular counsel, and for that reason the
matter was not brought up. This, however, cannot be taken
into account, especially now after almost a year. Hatch v.
Indianapolis & S. R. Co. 11 Biss. 138, 9 Fed. 856, 860.

2. It is argued that certain claims have been allowed prefer-
ence which have no higher standing than the one at bar, and
which, in fact, do not come within the principle of the West
India Oil Co. Case. The claims in question were duly re-
ferred to the master without opposition from the purchasers,
who are the parties who would be prejudiced by them, were
reported by him, and were not excepted to, and, therefore, duly
confirmed. It is too late now to discuss them. The court can-
not undertake to find exceptions, whether of fact or of law, to
a master's report when the parties themselves do not do so,
especially after the report has been confirmed. If this was
done there would be no certainty in any confirmation. It may
be added, however, that, if these claims so confirmed do relate
to local law, and are not within the West India Oil Co. decision,
they will not be regarded as a precedent. They may be settled
as a matter of litigation between these parties, but they form
no basis for future decisions. The parties are bound by mas-
ters' reports if they do not except to them. The principle, how-

ever, of such a report not discussed before the court is not necessarily binding upon the court itself. Burke v. Davis, 26 C. C. A. 675, 53 U. S. App. 414, 81 Fed. 907, 910.

3. It is set up that no exception is necessary to a report upon a matter of law. This is correct where it is a pure legal matter to be reviewed.

This, however, does not mean that after the term at which there was a confirmation, whether automatic or by special decree, a party can come in and have a decree set aside. In a master's finding a defect of law can no doubt be set up without formal exception at any time within the twenty days allowed for formal exceptions, and it may well be that at the same term the court will, for special reasons revise such a confirmation. But the practice should go no further. This should not be done at a subsequent term.

4. Attention should further be called to the proper matter of procedure in exceptions. Rule 83 of this court provides that an exception must set out a reference to the evidence in respect of which it is claimed that the master erred. Unless this is done, it is impossible for the court to consider anything except a matter of law with certainty, and there is nothing before it except the master's report. No court will presume error in a judgment which it is reviewing. In the exception now made to the master's report there is no such reference. This may be due, however, to the fact that the master filed no testimony with his report. The master's report should consist of, first, his finding, and, second, the evidence upon which it is based. The two together are necessary to make up the report. A report simply of the findings must, upon application,

be sent back as irregular. There is no such application in the case at bar.

5. The principle is invoked, however, that in the matter of a fund in court proper applications will be considered up to the time of distribution. New York Secur. & T. Co. v. Lombard Invest. Co. 73 Fed. 537. As there has been no final decree upon all preferences, it is contended that it is not too late to press the one at bar.

This principle, however, is not applicable. There was in this instance a sale of the receivership property on February 8, 1915. The bid accepted was not in the usual form of an offer of so much money for the property. In such case the court would have paid whatever claims were properly allowable out of the fund and turn the balance over to the bondholders or other parties in interest. The fund, however, in court, if that term be correct, would have been the amount of money offered and accepted. In the case at bar the bid consisted of a certain amount cash, and an offer to satisfy all claims preferred or to be held as preferred by the court. This bid has been accepted and must relate to the time of the sale. There was no exception to this form of bid, and it was accepted and the sale confirmed *sub modo*. The principle of a cash offer, however, must be followed. The amount should not be increased or diminished over what was fairly within the scope of the March sale. This petition was filed before the sale, and so was notice of the facts of the claim, but it was also evidence of the lack of diligence of the claimants.

6. This, however, is not conclusive in the case. The fact is that the purchasers at this March sale have acquired cane cars which were not paid for. While it must be decided that

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

there was no lien upon the fund in the hands of the receiver under the doctrine of the West India Oil Co. Case, the purchasers at this sale were put on notice by the proceedings in the case as to this part of the property they purchased. It is inequitable that they should receive this property under the circumstances without making good its value at the time of their purchase. It is therefore referred to the master to ascertain, state, and report the reasonable market value of this property on February 8, 1915, and, if the purchasers wish to retain such of the cars as passed to them, they must pay to the claimants the amount so found. It may be that with greater diligence the claimants would have been able to establish a lien under the West India Oil Co. Case principle. At present, however, they can only follow what was once their property in the manner above indicated.

The lien claimed by the claimants is denied, except so far as may be found by the master at the reference above ordered.

This is not to be taken as a precedent for any other case. The petition at bar was filed before the sale and has been kept alive, although informally, since that time.

The exceptions of the New Orleans Acid & Fertilizer Company to the master's report of May 10, 1915, seek to bring that claimant within the principle of the Orenstein-Arthur-Koppel Company Case. The facts as to claim and procedure are different, however, and so far as appears none of the property so covered now exists in specie. These exceptions are therefore overruled.

It is so ordered.